UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR 25-447 MJD/LIB<br>**INDICTMENT** |
| Plaintiff, | 18 U.S.C. § 1343 |
| | 18 U.S.C. § 1957 |
| v. | 18 U.S.C. § 981(a)(1)(C) |
| | 21 U.S.C. § 853(p) |
| ABDIRASHID BIXI DOOL, | 28 U.S.C. § 2461(c) |
| Defendant. | |

THE UNITED STATES GRAND JURY CHARGES THAT:

At times relevant to the indictment:

## INTRODUCTION

1. The defendant devised and carried out a multi-million-dollar scheme to defraud the federal child nutrition program, a program designed to provide free meals to children. The defendant obtained, misappropriated, and laundered millions of dollars in program funds that were intended as reimbursements for the cost of serving meals to children. The defendant capitalized on changes in the program intended to ensure that underserved children received adequate nutrition during the Covid-19 pandemic. The defendant exploited the Covid-19 pandemic—and the resulting program changes—to enrich himself by fraudulently misappropriating millions of dollars in federal child nutrition program funds.

    **A.    Background on the Federal Child Nutrition Program**

2. The Food and Nutrition Service is an agency of the United States Department of Agriculture (USDA) that administers various federal child nutrition


SCANNED
NOV 18 2025
U.S. DISTRICT COURT MPLS

programs, including the Summer Food Service Program and Child and Adult Care Food Program (together, the "Federal Child Nutrition Program").

3. The Summer Food Service Program is a federal program established to ensure that children continue to receive nutritious meals when school is not in session. The Summer Food Service Program reimburses non-profit organizations and other participating entities that serve free healthy meals and snacks to children and teens in low-income areas.

4. The Child and Adult Care Food Program is a federal program that reimburses non-profit organizations and other participating entities that serve healthy meals and snacks to children and adults at participating child care centers, day care homes, and after-school programs.

5. The Federal Child Nutrition Program operates throughout the United States. The USDA's Food and Nutrition Service administers the programs at the national and regional levels by distributing federal funds to state governments, which provide oversight of the Federal Child Nutrition Program.

6. The Minnesota Department of Education (MDE) administers the Federal Child Nutrition Program in Minnesota.

7. Meals funded by the Federal Child Nutrition Program in Minnesota are served at "sites." Each site participating in the Federal Child Nutrition Program must be sponsored by an organization that is authorized to participate in the Federal Child Nutrition Program. Sponsors are required to submit an application to MDE for each

site. Sponsors are responsible for monitoring each of their sites and preparing reimbursement claims for their sites.

8. Sponsors submit reimbursement claims to MDE on behalf of sites under their sponsorship. The USDA provides federal reimbursement funds to MDE on a per-meal basis. MDE provides the federal funds to the sponsoring agency, which in turn pays the reimbursement funds to the sites under its sponsorship. The sponsoring agency retains ten to fifteen percent of the funds as an administrative fee in exchange for sponsoring the sites, submitting reimbursement claims, and disbursing the federal funds.

9. Historically, the Federal Child Nutrition Program has provided meals to children involved in education-based programs or activities. During the Covid-19 pandemic, the USDA waived several of the standard requirements for participation in the Federal Child Nutrition Program. Among other things, the USDA allowed for-profit restaurants to participate in the program. It also allowed for food distribution to children outside of educational programs. At the same time, the state government's stay-at-home order and telework policies made it more difficult to oversee the program. These changes left the program vulnerable to fraud and abuse.

### B. Feeding Our Future

10. Feeding Our Future was a Minnesota non-profit organization purportedly in the business of helping community partners participate in the Federal Child Nutrition Program. Aimee Bock was the founder and executive director of Feeding Our Future. Feeding Our Future was an approved sponsor of the Federal Child Nutrition Program.

11. Prior to the onset of the Covid-19 pandemic, Feeding Our Future was a small non-profit that sponsored the participation of Minnesota daycares and after-school programs in the Federal Child Nutrition Program.

12. Beginning in approximately April 2020, Feeding Our Future dramatically increased the number of sites under its sponsorship as well as the amount of Federal Child Nutrition Program funds received by those sites. Feeding Our Future went from receiving and disbursing approximately $3.4 million in federal funds to sites under its sponsorship in 2019 to nearly $200 million in 2021.

13. Aimee Bock oversaw a scheme to defraud, carried out by sites under the sponsorship of Feeding Our Future. Aimee Bock and Feeding Our Future sponsored entities that submitted fraudulent reimbursement claims and fake documentation. In 2020 and 2021, Aimee Bock and her company sponsored the opening of nearly 200 Federal Child Nutrition Program sites, knowing that the sites were submitting fraudulent claims.

14. In exchange for sponsoring the sites' fraudulent participation in the program, Feeding Our Future received nearly $18 million in Federal Child Nutrition Program funds as administrative fees in 2021. Because the amount of administrative fees it received was based on the amount of federal funds received by sites under its sponsorship, Feeding Our Future received tens of millions of dollars in administrative fees to which it was not entitled, due to its sponsorship and facilitation of fraudulent sites participating in the program.

15. In addition to receiving tens of millions of dollars in administrative fees, Feeding Our Future employees solicited and received bribes and kickbacks from individuals and sites under the sponsorship of Feeding Our Future. In effect, Feeding Our Future operated a "pay-to-play" scheme in which individuals seeking to operate fraudulent sites under the sponsorship of Feeding Our Future had to kick back a portion of their fraudulent proceeds to Feeding Our Future employees. Many of these kickbacks were paid in cash or disguised as "consulting fees" paid to shell companies created by Feeding Our Future employees to conceal the true nature of the payments and to make them appear legitimate.

**C. The Defendant and His Role**

16. The defendant ABDIRASHID BIXI DOOL co-operated, and served on the boards, of two Minnesota non-profits, Bilaal Mosque Inc. and Multicultural Resource Center Inc. He served as President of MRC.

17. Through those companies, DOOL and Conspirator A participated in the Federal Child Nutrition Program under the sponsorship of Feeding Our Future. Dool's supposed food-distribution sites, Bilaal and MRC, were supposed to provide food and meals to children participating in the Federal Child Nutrition Program; Dool's companies would be reimbursed for the cost of the food and meals it provided.

18. In all, between approximately March 2021 and February 2022, Bilaal and MRC combined submitted over $1.2 million in reimbursement claims to Feeding Our Future for meals purportedly served to children. Of that total, Bilaal and MRC received about $1.1 million in Federal Child Nutrition Program funds.

### Scheme to Defraud the Federal Child Nutrition Program

19.    From in or about March 2021 and February 2022, in the State and District of Minnesota, and elsewhere, the defendant,

**ABDIRASHID BIXI DOOL**,

and others known and unknown to the grand jury, did knowingly devise and participate in a scheme and artifice to defraud and to obtain money by means of materially false and fraudulent pretenses, representations, and promises, and by concealment of material facts, and for the purpose of executing this scheme caused wire transmissions to be sent in interstate commerce.

20.    A main purpose of the scheme and artifice to defraud was to fraudulently obtain millions of dollars in Federal Child Nutrition Program funds by causing the submission of fraudulent information, including falsified invoices and meal count records with substantially inflated figures. As a food site operator in the Federal Child Nutrition Program, DOOL was responsible for serving food to children. However, in furtherance of the scheme, DOOL and his conspirators caused the submission to Feeding Our Future and to the Minnesota Department of Education of false information, such as meal counts, rosters, and invoices, and DOOL consequently received Federal Child Nutrition Program funds that substantially exceeded the small amount of food that DOOL served to children.

### DOOL's Role in the Scheme to Defraud

21.    In furtherance of the scheme to defraud, in or about March 2021, DOOL and Conspirator A applied with Feeding Our Future for Bilaal and MRC to operate

as food program sites under Feeding Our Future's sponsorship. DOOL thereafter purported to operate both sites—one in Pelican Rapids and in Moorhead, Minnesota.

22. At those sites, DOOL claimed to serve tens of thousands of meals to children. In reality, DOOL's operations served only a small fraction of those claimed amounts.

23. In furtherance of the scheme, DOOL completed meal count sheets falsely representing that both sites fed thousands of meals to children daily, for months. At times, DOOL represented in those meal counts to be serving over 40,000 meals to children every week. DOOL signed those meal counts, representing them to be accurate. However, as DOOL knew, those meal counts were false and inflated. DOOL then caused those counts to be submitted to Feeding Our Future in support of his sites' fraudulent claims for reimbursement.

24. DOOL also caused to be submitted to Feeding Our Future fraudulent invoices purporting to detail food purchased by Bilaal and MRC for use in feeding children within the food program. In reality, however, DOOL purchased very little food. As he knew, the submitted invoices were inflated and fraudulent. Many of the invoices DOOL used to substantiate his inflated reimbursement claims purported to represent purchased from a company called Smart Drive LLC. But Smart Drive LLC was a shell entity owned by DOOL.

25. DOOL also caused to be submitted to Feeding Our Future phony rosters purporting to list the names of children who were served meals at the Bilaal and MRC

7

sites. As DOOL knew, those rosters did not accurately reflect the identities and numbers of children actually fed at his sites.

26. Between approximately March 2021 and February 2022, Bilaal and MRC received about $1.1 million in Federal Child Nutrition Program funds directly from Feeding Our Future. However, little of this money was used by DOOL to purchase food.

27. Instead, DOOL and Conspirator A—who controlled the Bilaal and MRC bank accounts—diverted most of those taxpayer dollars to family and to himself.

28. DOOL and Conspirator A laundered the proceeds they received from this scheme. DOOL used his cut of the fraud proceeds to travel, enrich himself, and buy real estate.

### Counts 1-4
### (Wire Fraud)

29. Paragraphs 1 through 28 are incorporated herein.

30. From at least in or about March 2021 through in or about February 2022, in the State and District of Minnesota, and elsewhere, the defendant,

**ABDIRASHID BIXI DOOL,**

and others known and unknown to the grand jury, did knowingly devise and participate in a scheme and artifice to defraud and to obtain money by means of materially false and fraudulent pretenses, representations, and promises, and by concealment of material facts.

31. On or about the dates listed below, in the State and District of Minnesota and elsewhere, the defendant, for the purpose of executing the scheme

described above, knowingly caused to be transmitted by means of a wire communication in interstate commerce, certain writings, signs, signals, and sounds, including the following:

| Count | Date (on or about) | Wire Details |
|---|---|---|
| 1 | December 1, 2021 | An email from DOOL to himself attaching Bilaal attendance rosters. |
| 2 | December 15, 2021 | An email from DOOL to himself attaching an MRC attendance roster. |
| 3 | December 23, 2021 | An email to DOOL concerning the creation of invoice templates for Smart Drive LLC |
| 4 | February 8, 2022 | An email from DOOL to Minnesota Department of Education concerning food program payments. |

All in violation of Title 18, United States Code, Section 1343.

### Counts 5-7
(Engaging in Monetary Transactions in
Property Derived from Specified Unlawful Activity)

32.     Paragraphs 1 through 31 are incorporated herein.

33.     On or about the dates listed below, in the State and District of Minnesota and elsewhere, the defendant,

**ABDIRASHID BIXI DOOL**,

knowingly engaged and attempted to engage in monetary transactions by, through, or to a financial institution, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000, as described below, such property having been derived from specified unlawful activities, namely, wire fraud, in violation of Title 18, United States Code, Section 1343:

*United States v. Abdirashid Bixi Dool*

| Count | Date (on or about) | Transaction |
|---|---|---|
| 5 | October 15, 2021 | The withdrawal of $230,472 from MRC. |
| 6 | January 3, 2022 | The deposit of a $10,600 check from Bilaal to Smart Drive LLC. |
| 7 | February 23, 2022 | The purchase of a cashier's check of about $27,057. |

All in violation of Title 18, United States Code, Section 1957.

## FORFEITURE ALLEGATIONS

34.  Counts 1 through 7 of this Indictment are incorporated by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C) in conjunction with Title 28, United States Code, Section 2461(c), and pursuant to Title 18, United States Code, Section 982(a)(1).

35.  If convicted of any of Counts 1 through 4 of this Indictment, the defendant shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to Counts 1 through 4 of the Indictment.

36.  If convicted of any of Counts 5 through 7 of this Indictment, the defendant shall also forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), any property, real or personal, involved in a transaction or attempted transaction in violation of 18 U.S.C. § 1957 and any property traceable to such property.

37.  The property subject to forfeiture includes, but is not limited to, the real property and all structures located at 26 Mill Ave W, Pelican Rapids, Minnesota, and

the real property and all structures located at 404 8th Ave SE, Pelican Rapids, Minnesota.

38.  If any of the above-described forfeitable property is unavailable for forfeiture, the United States intends to seek the forfeiture of substitute property as provided for in Title 21, United States Code, Section 853(p) as incorporated by Title 18, United States Code, Section 982(b)(1) and Title 28, United States Code, Section 2461(c).

A TRUE BILL

_____      _____
UNITED STATES ATTORNEY                FOREPERSON